IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| PAMELA R. SHOMO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-cv-989 (LMB/JFA) |
| | ) | |
| NAPA MANAGEMENT SERVICES CORPORATION, | ) ) ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

Before the Court is the defendant, North America Partners in Anesthesia's[1] ("defendant" or "NAPA") Motion to Dismiss the Complaint ("Motion to Dismiss") [Dkt. No. 3], which includes a clear <u>Roseboro</u> notice advising the pro se plaintiff, Pamela R. Shomo ("plaintiff" or "Shomo") of her right to respond. Plaintiff has responded by filing a letter to which she attached 173 pages of documents, mostly comprised of her personal medical records and email exchanges with various NAPA employees concerning workplace issues. Defendant has filed a reply brief. The Court finds that oral argument would not aid the decisional process. For the reasons stated below, defendant's Motion to Dismiss will be granted, and the Complaint will be dismissed with prejudice.

---

[1] In its Notice of Removal [Dkt. No. 1], its Financial Interest Disclosure Statement [Dkt. No. 2] and its Motion to Dismiss the Complaint [Dkt. No. 3] the defendant argues that its name is NAPA Management Services Corporation ("NMSC") rather than North American Partners in Anesthesia, and that the Complaint misnames it. Because a motion to dismiss requires the Court to take all allegations of the non-moving party as true, the Court will refer to defendant as North American Partners in Anesthesia ("NAPA"); however, for purposes of the record, the Clerk will be directed to correct the name of the defendant.

I.   BACKGROUND

By a six page letter, which the Court deems to be a complaint, plaintiff seeks $350,000 from defendant for "Retaliation, Race, Defamation of Character, and Bullying by Management." [Dkt. No. 1-1] at 2. In a series of "bullet[s]," the Complaint chronicles various alleged acts by plaintiff's superiors, but never describes plaintiff's race, plaintiff's engagement in any protected activity, or any statements that would qualify as defamatory. What these bullets do show is that plaintiff was hired by defendant on October 5, 2020 for a full-time "Account Receivable Representative" position, id. at 6, in which she worked on insurance reimbursements for medical services provided by the defendant. These bullets also show that, during this time, plaintiff had multiple disagreements with her supervisors about how coding and billing should be done.

For example, in the bullet titled "January 8,2021 [sic]," the Complaint alleges that plaintiff's supervisor, Janelle, forwarded plaintiff's work to an insurance representative "to double check as if [plaintiff] did not know what [she] was doing." Id. at 2. The March 10, 2021 bullet describes plaintiff being "written up" by Janelle for not meeting productivity quotas and being cautioned to be "mindful when approaching supervisor and teammates." Id. at 3. The May 27, 2021 bullet references plaintiff having "multiple mental breakdowns," which resulted in plaintiff sending an email to Kristine Meade, Chief of Compliance, in which plaintiff complained about feeling targeted by "negative feedback from upper management." Id. at 4. The next bullet addresses a meeting on May 28, 2021, again concerning plaintiff's productivity, and describes another of plaintiff's managers, Jennifer, telling her: "I AM THE MANAGER AND MELANIE IS THE SUPERVISOR[.] EVERYONE FINDS IT HARD TO WORK WITH YOU, NO ONE ELSE TALKS TO US LIKE THIS." Id. at 4 (emphasis in original).

The December 6, 2021 bullet describes what plaintiff characterizes as the "final straw that broke [her] mental." [Dkt. No. 1-1] at 6. This meeting with plaintiff's new management team in the North Carolina division again addressed productivity issues. Plaintiff alleges she tried to explain why she did not appear to be meeting standards for productivity, but her supervisors[2] did not listen to her. Id. As a result, on January 4, 2022, plaintiff resigned from NAPA. Id. On April 8, 2022, she filed a charge with the EEOC alleging she had "been discriminated and retaliated against based on [her] race and color (African American, Black) in violation of Title VII of the Civil Rights Act of 1964." Id. at 8. The charge was dismissed on April 8, 2022, and plaintiff was provided with a right to sue letter. Id. at 10.

Plaintiff filed her Complaint in the Circuit Court for the County of Prince William on July 7, 2022. [Dkt. No. 1] at 1. Defendant removed it to this court on August 30, 2022, id., and, on September 6, 2022, defendant filed the pending Motion to Dismiss [Dkt. No. 3], arguing that, pursuant to Fed. R. Civ. P. 12(b)(6), the Complaint failed to allege any causes of action for which relief can be granted.

II.   DISCUSSION

As the defendant correctly points out, [Dkt. No. 4] at 1, it is very difficult to decipher exactly what claims plaintiff intended to bring as she does not cite to any specific statute; rather, she simply claims to "file a suit . . . for the Retaliation, Race, Defamation of Character, and Bullying by Management." [Dkt. No. 1-1] at 2. Because pro se complaints often "represent the work of an untutored hand requiring special judicial solicitude," Beaudett v. City of Hampton,

---

[2] The Complaint does not specifically outline the positions of these three individuals who participated in the meetings—Ashley Gould, Maxine King and Gregory Grant; however, it refers to Ashley as plaintiff's supervisor and Gregory as her Team Lead. Maxine appears to have some supervisory or other authority over plaintiff, and therefore, the Court will refer to this group as "supervisors." [Dkt. No. 1-1] at 5–6.

3

775 F.2d 1274, 1277 (4th Cir. 1985), even though the Complaint does not explicitly identify the causes of action plaintiff seeks to pursue, the Court will construe it as containing three claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.,— namely, discrimination based on race, retaliation for engaging in protected activity, and discriminatory harassment in the form of a hostile work environment[3]—and a supplemental Virginia state law claim for defamation.

### A. Standard of Review

Defendant has moved to dismiss all these claims under Fed. R. Civ. P. 12(b)(6) for failure to allege a cognizable cause of action. A motion to dismiss under Rule 12(b)(6) requires a court to dismiss a claim if the "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Even though pro se complaints are to be construed liberally, a pro se plaintiff must still state a claim for relief that is plausible on its face. Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016). Finally, "[w]ithout converting a motion to dismiss into a motion for summary judgment, a court may consider the attachments to the complaint, documents incorporated in the complaint by reference, and documents 'attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" Lokhova v. Halper, 441 F. Supp. 3d

---

[3] As defendant correctly argues, there is no recognized cause of action known as "bullying" or "bullying by management"; however, construing this claim broadly, the Court will treat it as a hostile work environment claim.

4

238, 252 (E.D. Va. 2020) (quoting Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)).

## B. Racial Discrimination

To state a claim for Title VII discrimination, a complaint must "include adequate factual allegations to support a claim that the [employer] discriminated against her because [of her protected status]." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 583 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)) (emphasis in original). Specifically, to allege a claim of race-based discrimination, a complaint must allege facts to support the following four elements beyond a speculative level: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment decision; and (4) the occurrence of an adverse employment action under circumstances that give rise to an inference of unlawful discrimination." Green-Wright v. Capital One Services, LLC, 2021 WL 4227057, at *2 (E.D. Va. Sept. 16, 2021). Although plaintiff does not need to establish a prima facie case at this stage, "courts may look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." Anthony D. Craft, v. Fairfax County, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016).

There is not a single reference to plaintiff's race in her Complaint. Only her EEOC charge, which is attached to her Complaint, reveals that she is Black; however, other than identifying her race, that charge contains no factual allegations supporting a claim that her race had any connection to the actions taken by her employer. Instead, it merely states that plaintiff believed she was "discriminated and retaliated against based on my race and color . . . in violation of the Title VII of the Civil Rights Act of 1964." [Dkt. No. 1-1] at 8. Such "'naked' allegations—a 'formulaic recitation' of the necessary elements—'are no more than

5

conclusions,'" and are insufficient to plead racial discrimination. McCleary-Evans, 780 F.3d at 585 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009)).

Although plaintiff has, through her EEOC charge, alleged that she is a member of a protected class, thereby satisfying the first element, the Complaint does not include sufficient facts to allege that any of the treatment plaintiff faced was due to her race. To the contrary, the Complaint alleges that some of the treatment was caused by her supervisors' concern with plaintiff's productivity and ability to handle disagreements with coworkers. [Dkt. No. 1-1] at 3–4. This allegation undercuts the second element that plaintiff was performing satisfactorily.

An additional fatal defect in the Complaint is its failure to allege that the plaintiff suffered an adverse employment action on account of her race. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). Typical examples include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

The Complaint does not allege that plaintiff suffered any demotion, loss of responsibility, or pay reduction; however, it does allege that the defendant's conduct caused her to resign from her position. Although resignation can be treated as an adverse action if the employer's behavior is so poor that it constitutes a constructive discharge, plaintiff's allegations do not support this theory. A resignation is treated as a constructive discharge when an employer "deliberately makes an employee's working conditions intolerable, and thereby forces [her] to quit [her] job." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). But, "mere [d]issatisfaction

with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not meet this high standard. James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004) (citations and internal quotation marks omitted). As these are exactly the kind of conduct about which plaintiff complains, she has not pled that she suffered an adverse employment action. Because the Complaint has not sufficiently alleged that plaintiff was satisfactorily performing her job or that she suffered an adverse employment action based on her race, her claim for race-based discrimination will be dismissed.

### C. Retaliation

For similar reasons, plaintiff's claim for Title VII retaliation also fails. To sufficiently allege a Title VII retaliation claim, a complaint must allege that "(1) [plaintiff] engaged in a protected activity; (2) an adverse action was taken against her by the [d]efendant; and (3) there was a causal connection between the first two elements." Forgus v. Mattis, 753 Fed. Appx. 150, 154 (4th Cir. 2018) (unpublished). An employee engages in protected activity when she opposes employment actions that she reasonably believes to be illegal. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015). In the Title VII context, this means opposing acts of racial discrimination. To show an adverse action in a retaliation claim, a complaint must allege enough facts to show "that a reasonable employee would have found the challenged action[s] materially adverse," meaning "[they] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Forgus, 753 Fed. Appx. at 154 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

This claim fails because nowhere in the Complaint or its attachments does plaintiff allege that she engaged in protected activity before she resigned from NAPA. Simply complaining about being treated rudely by managers or disagreeing about work quotas does not qualify as a protected activity for Title VII purposes. The Complaint alleges that, on May 27, 2021, plaintiff

7

emailed the Chief of Compliance that she had been "experiencing a lot of negative feedback from upper management going on a couple of months now," and requested advice on how to proceed. [Dkt. No. 1-1] at 4. The Complaint further alleges that plaintiff filed "another complaint [with] HR" after the May 28, 2021 meeting with her manager and supervisor regarding her productivity. Id. The Complaint also appears to allege that plaintiff opposed her supervisor's instruction to change a code in medical records because "[she] informed [her supervisor] it is illegal to change codes." [Dkt. No. 1-1] at 2. Even setting aside the conclusory nature of this final allegation, none of these allegations rise to the level of a Title VII "protected activity" because the Complaint does not allege plaintiff opposed an employment action that could reasonably be construed as a violation of Title VII, such as an act of racial discrimination.

The only action that does qualify as protected activity was plaintiff's filing an EEOC complaint, [Dkt. No. 1-1] at 8; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998); however, that occurred on April 8, 2022, more than four months after plaintiff resigned from NAPA. Even if plaintiff's resignation were construed as a constructive discharge, and, therefore, a materially adverse employment action, there cannot be a causal relationship between her protected activity and her resignation because the resignation occurred before the protected activity. As such, the Complaint fails to allege any protected activity that could possibly causally relate to any materially adverse action, and for these reasons, plaintiff's retaliation claim will be dismissed.

**D. Hostile Work Environment**

The Complaint also fails to state a claim for a hostile work environment. To allege a hostile work environment in violation of Title VII, a complaint must plead facts to show (1) "unwelcome harassment"; (2) "based on [a protected characteristic]; (3) that "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere";

8

and (4) for which "there is some basis for imposing liability on the employer." Holloway v. Maryland, 32 F.4th 293, 300 (4th Cir. 2022). This claim fails for the same reasons plaintiff's race discrimination fails—the Complaint simply does not allege facts supporting a claim that any of the actions taken against plaintiff were because of her membership in a protected class or engagement in protected activity.

Additionally, the Complaint has failed to allege that the plaintiff faced "severe or pervasive" harassment from anyone at NAPA. Holloway, 32 F.4th at 300. To find that a claim of harassment qualifying as a violation of Title VII has been alleged, the Court must consider a complaint's allegations of the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011). The inquiry focuses on whether a complaint alleged sufficient facts to make a plausible claim that the plaintiff's workplace was "hostile or deeply repugnant" and not "merely unpleasant." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996). "Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." Laurent-Workman v. Wormuth, 2022 WL 17256701, at *4 (4th Cir. Nov. 29, 2022) (quoting E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010)). This "high bar" of conduct attributable to a defendant cannot be met merely by alleging "rude treatment," "callous behavior," or "routine difference of opinion and personality conflict." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–316 (4th Cir. 2008) (internal quotation marks omitted). In plaintiff's case, her Complaint's allegations of negative feedback from supervisors and managers and conflicts with them about coding and billing are precisely this type of "routine difference of opinion" that does not constitute severe or

pervasive harassment, let alone any evidence that the conflict was related to plaintiff's race or any alleged protected activity. For these reasons, this claim will be dismissed.

### E. Defamation

To state a claim for defamation, a complaint must allege "three elements: '(1) publication of (2) an actionable statement with (3) the requisite intent.'" Virginia Citizens Def. League v. Couric, 910 F.3d 780, 783 (4th Cir. 2018). "Publication" means the defendant communicated the statement to a third party. Lambert v. Whiting Turner Contractor, WL 2946176, at *6 (E.D. Va. May 19, 2016). Defendant argues that most of the statements about which plaintiff complains are time-barred. In Virginia, there is a one-year statute of limitations for defamation claims which begins to run from the "date of publication." Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 914 (E.D. Va. 2004). As such, only the Complaint's allegations about statements made after July 7, 2021 may be considered.

The two statements alleged in the Complaint with any specificity that fall within the statute of limitations occurred on November 22, 2021 and December 6, 2021. Each involved conversations between NAPA supervisors and the plaintiff about "how [plaintiff was] not meeting productivity and what [she was] not doing" at work with plaintiff attempting to "explain that [she was] diligent in [her] work." [Dkt. No. 1-1] at 5–6. The Complaint does not allege that any third parties were present for these discussions.

"The publication requirement for defamation requires a dissemination of the statement to a third party where that dissemination does not occur in a privileged context." Taylor v. CNA Corp., 782 F. Supp. 2d 182, 201 (E.D. Va. 2010) (citing Montgomery Ward & Co. v. Nance, 165 Va. 363, 379 (1935)). And, it is "well-settled under Virginia law that . . . 'statements made between co-employees and employers in the course of employee disciplinary or discharge matters are privileged.'" Id. at 202. This is a qualified privilege that can be overcome by

10

allegations of facts showing that the statements were made with common law malice, id., such as "showing that: (1) the statements were made with knowledge that they were false or with reckless disregard for their truth; (2) the statements were communicated to third parties who have no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will; (4) the statements included strong or violent language disproportionate to the occasion; or (5) the statements were not made in good faith." Meredith v. Nestle Purina Petcare Co., 516 F. Supp. 3d 542, 557 (E.D. Va. 2021).

To survive a motion to dismiss a defamation claim, a complaint must "set forth a 'sufficient allegation of malice'" which plaintiff's Complaint clearly has failed to do. Meredith, 516 F. Supp. 3d at 557. Outside of conclusory allegations that the management team had "target[ed] and bull[ied]" plaintiff, and that they had "Loathe [sic] intentions towards" her, the Complaint alleges no facts indicating that the statements made by the three supervisors were made in bad faith or motivated by personal spite. [Dkt. No. 1-1] at 6. Further, even if the Complaint had sufficiently alleged facts to show malice, the statements complained of do not, as a matter of law, constitute actionable defamation.

An actionable statement is one which is both false and defamatory. Dragulescu v. Virginia Union Univ., 223 F. Supp. 3d 499, 507 (E.D. Va. 2016). Because an opinion cannot be false, only factual statements are actionable. Id. Here, the Complaint only alleges two factual statements in the November 22, 2021 and December 6, 2021 conversations. Both involve a supervisor criticizing plaintiff's productivity, with one citing a "Corrective Plan" made for plaintiff by her prior supervisor, Janelle, after Janelle criticized plaintiff's productivity, and the other citing to audits of plaintiff's productivity requested by her then-current supervisors, Ashley and Maxine. The Complaint describes that in the first meeting with plaintiff, one supervisor

11

mentioned "that when [plaintiff] was over on the Virginia Region [she] was brought up about [her] production and productivity." [Dkt. No. 1-1] at 5. In the December meeting with the same supervisors, the Complaint alleges that the supervisors were "discussing how [plaintiff was] not meeting productivity and what [she is] not doing when [she was] trying to explain that [she is] diligent in her work." Id. at 6. The Complaint alleges that the statements that plaintiff was unproductive at work were false. Even if the statements were false, they lack the "defamatory 'sting'" required by Virginia law. Schaecher v. Bouffault, 772 S.E.2d 589, 594 (Va. 2015). Defamatory statements are those which "tend[] to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon [her], or which tend[] to hold [her] up to scorn, ridicule, or contempt, or which is calculated to render [her] infamous, odious, or ridiculous." Id. (quoting Moss v. Harwood, 46 S.E. 385 (Va. 1904)). A supervisor's statements that plaintiff's work productivity was below the standards of the company are not those which would "lower [her] in the estimation of the community or . . . deter third persons from associating or dealing with [her]." Id. Because the statements alleged in the Complaint were neither published nor defamatory, this claim will be dismissed.[4]

### F. Leave to Amend

Defendant seeks a dismissal with prejudice. Generally, a plaintiff should be granted leave to amend a complaint "in light of 'this Circuit's policy to liberally allow amendment.'" Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018) (quoting Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010)). But, "a district court may deny leave to amend 'when the amendment would be prejudicial to the [non-amending] party, there has been

---

[4] Were the Court to find this kind of criticism by a supervisor of an employee's work defamatory, it would be impossible for an employer ever to counsel an employee about subpar performance.

bad faith on the part of the [amending] party, or the amendment would be futile.'" Id. (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Plaintiff attached 173 pages of largely irrelevant documents, including her own medical information and the medical information of third parties, to her opposition to the Motion to Dismiss. [Dkt. No. 6-1]. Given the lack of specificity in both plaintiff's EEOC complaint and this Complaint, the lack of any meaningful opposition to the Motion to Dismiss, and the irrelevant attachments to plaintiff's opposition, the Court finds that any amendment would be futile. Therefore, the dismissal of this Complaint will be with prejudice.

### III. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss the Complaint will be GRANTED, and plaintiff's Complaint will be dismissed with prejudice by an accompanying order.

Entered this 6 day of December, 2022.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge